**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA RABINOWITZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLTRAN FINANCIAL LP,<br><br>Defendant. | Civ. Action No. 21-12756<br><br>**OPINION** |

CASTNER, District Judge

I.    **INTRODUCTION**

Before the Court is Defendant Alltran Financial, LP's ("Defendant") Motion to Dismiss Plaintiff Joshua Rabinowitz's ("Plaintiff") Class Action Complaint ("Compl."). Plaintiff alleges, on behalf of himself and all others similarly situated, that he was harmed by two debt collection letters that were sent to him by Defendant, and by Defendant's use of a third-party letter vendor, all of which Plaintiff claims were in violation of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692, *et seq*. Defendant filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that their practices are in compliance with the FDCPA. (Motion to Dismiss ("MTD"), ECF No. 6.)

The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For

the reasons set forth below, Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of Article III Standing, and Defendant's Motion to Dismiss is **DENIED AS MOOT**.

## II.     BACKGROUND

### A.     *Factual Background*

This matter arises out of Plaintiff's assertions that at some point prior to June 18, 2020, he incurred a financial debt ("the Debt") to American Express that "became past due with a balance of $4,945.71." (Compl. ¶¶ 14, 18.) At some point shortly thereafter, the Debt was referred to Defendant, a "debt collector," by American Express for collection. (*Id.* ¶¶ 9, 19.)

Plaintiff asserts that he received two debt collection letters from Defendant, the contents of which are the subject of this dispute. (*Id.* ¶¶ 21, 52.) The first letter was sent on or about June 18, 2020. (Compl. Ex. A ("June Letter"), ECF No. 1.) The second letter was sent on or about July 16, 2020. (Compl. Ex. B ("July Letter"), ECF No. 1.)

While Plaintiff alleges that the contents of the June and July letters violate the FDCPA, as discussed below, he also asserts that when Defendant contacted him via the June and July letters, Defendant did not prepare and mail the letters on its own. (Compl. ¶ 61.) Instead, Defendant sent information regarding Plaintiff's account to a third-party letter vendor (the "Letter Vendor"). (*Id.* ¶ 62.) Plaintiff claims that Defendant disclosed "highly personal and confidential information" about Plaintiff, such as his name, the amount allegedly owed and his home address to the Letter Vendor without Plaintiff's consent, thereby violating the FDCPA. (*Id.* ¶¶ 63-74.)

Next, Plaintiff asserts that the June and July letters substantively violate the FDCPA.

1.      The June 18, 2020 Letter

Plaintiff alleges that he received a debt collection letter on June 18, 2020, concerning the

Debt.  (Compl. ¶ 21, June Letter.)  Plaintiff contends that the June Letter does not comply with the

requirements of the FDCPA.  (Compl. ¶¶ 25-49.)

The June Letter, in relevant part, states:

> Unless you notify this office within thirty days after
> receiving this notice that you dispute the validity of this debt
> or any portion thereof, this office will assume this debt is
> valid. If you notify this office in writing within thirty days
> after receiving this notice that you dispute the validity of this
> debt or any portion thereof, this office will obtain
> verification of the debt or obtain a copy of a judgment and
> mail you a copy of such verification or judgment. Upon your
> written request within the thirty day period after receiving
> this notice, this office will provide you with the name and
> address of the original creditor, if different from the current
> creditor.

(June Letter.)  Plaintiff alleges that the June Letter contains multiple addresses and does not

provide the consumer with the specific address to send disputes regarding the validity of the debt,

which would be confusing to the consumer.  (Compl. ¶¶ 37-50.)  The first address is at the top left

corner of the first page of the letter, immediately above the date of the letter and the phrase

"Address Service Requested."  (June Letter.)  The address listed there is PO Box 4043, Concord,

CA 94524-4043.  (*Id.*)  The second address, PO Box 722929, Houston TX, is located twice on the

letter.  It first appears immediately below the Debt Collection notice and right above the statement

that "[t]his communication is from a debt collector," and is stylized as follows:

Sincerely,

CEDDRICK L SAXTON
866-740-3108, ext. 3016
Alltran Financial, LP
P.O. Box 722929
HOUSTON TX 77272-2929

(*Id.*)  The same address also appears on a detachable slip that the consumer would return with payment as follows:

> Alltran Financial, LP
> PO BOX 722929
> HOUSTON TX 77272-2929

(*Id.*)  Both times the same Houston address appears, it is below Defendant's name, Alltran Financial, LP.  (*Id.*)

Finally, there is a third address, 5800 North Course Drive, Houston, TX 77072, which is located at the very bottom of the letter.  (*Id.*)  This address is where consumers are directed to write "[i]f [they] have a complaint about the way [Alltran is] collecting this debt."  (*Id.*)  The letter appears as follows:

> If you have a complaint about the way we are collecting this debt, you may write to our Contact Center, 5800 North Course Drive, Houston TX 77072 or call our toll-free Complaint Hotline at (800) 326-8040 between 7 AM and 4 PM (Central Time) Monday-Friday.

### 2.    The July 16, 2020 Letter

Plaintiff then alleges that he received a second letter from Defendant on or around July 16, 2020, before the expiration of the 30-day period in which Plaintiff had the opportunity to dispute the validity of the Debt.  (Compl. ¶ 52; July Letter.)  The July Letter states, in relevant part:

> American Express has authorized us to make you a special offer.  American Express values your previous relationship and would like to offer you the opportunity to regain Card Membership.  You have been selected to receive an Optima Card application if you pay your balance in full on the American Express® account referenced above.
>
> After you pay your balance in full, American Express will send you an application for the new Optima Card.  Your application will be approved by American Express unless:

4

- You have an active bankruptcy at the time of your application.
- You have accepted another offer for an Optima Card account from a different agency or from American Express.
- You have an active American Express account.
- American Express determines that you do not have the financial capacity to make the minimum payment on this new Optima Card account.

If you'd like to know more about this offer, please call us at 866-740-3108, ext. 3016. We are available to assist you at the hours listed below. You can make payments on our website at ww.alltranfinancialpay.com.

Act now and call us today to make payment arrangements on your account.

(July Letter.) Plaintiff alleges that the language in the letter violates the FDCPA because a consumer could believe that they would receive a new credit card if he or she made full payment on the outstanding debt, when in fact, all he or she would receive is an application for a new credit card. (Compl. ¶ 58.)

B.    *Procedural Background*

On June 18, 2021, Plaintiff filed a Class Action Complaint against Defendant. (Compl.) Plaintiff's claims stem from Defendant's attempt to collect on the Debt and consist of one count against Defendant pursuant to the FDCPA. (*Id.* ¶¶ 88-90.) Plaintiff asserts that Defendant has violated several sections of the FDCPA by (a) conveying Plaintiff's information to a third party letter vendor, (b) using "false, deceptive, or misleading misrepresentation or means in connection with the collection of a debt," (c) threatening to take action that cannot be legally taken, (d) using false or deceptive means to "collect or attempt to collect any debt or to obtain information concerning a consumer," (e) knowingly disclosing sensitive information to a letter vendor," (f) "effectively failing to provide the debt verification rights notice," and (g) using debt collection practices that are inconsistent with or "overshadow" Plaintiff's right to dispute the debt. (*Id.* ¶ 90.)

Plaintiff alleges that Defendant's conduct violated 15 U.S.C. § 1692c, 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(5), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f, 15 U.S.C. § 1692g, and 15 U.S.C. § 1692g(b).  (*See generally* Compl.)

Defendant filed a Motion to Dismiss on October 21, 2021.  (MTD.)  Plaintiff submitted Opposition to the Motion ("Opp.") on November 23, 2021.  (ECF No. 10.)  Plaintiff replied ("Reply") on December 6, 2021.  (ECF No. 11.)

On July 19, 2021, this Court *sua sponte* raised the issue of standing with the parties via a telephone status conference.[1]  (ECF No. 12.)  The Court ordered the parties to submit supplemental briefing on the limited issue of standing, which the parties timely provided.  (ECF Nos. 13-15.)

## III.    LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted).  While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Thus, to

---

[1]  *See Madlinger v. Enhanced Recovery Co., LLC*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at *1 (D.N.J. June 21, 2022) (raising the issue of standing in an FDCPA matter *sua sponte*.)  *See also Rohl v. Prof'l Fin. Co.*, No. 21-17507, 2022 U.S. Dist. LEXIS 96934, at *4 (D.N.J. May 31, 2022) ("To be sure, standing may be raised by the Court sua [s]ponte.")

survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard under *Twombly* and *Iqbal*, courts within this Circuit apply a three-step test. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## IV.    DISCUSSION

### A.    *The Fair Debt Collection Practices Act*

The FDCPA prohibits debt collectors from making false or misleading representations or engaging in abusive or unfair debt collection practices and imposes civil liability on debt collectors for certain prohibited practices. 15 U.S.C. § 1692(e); *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). Because the FDCPA is a "remedial statute," courts "construe its language broadly so as to effect its purpose" and assess communications to debtors from the perspective of the "least sophisticated debtor." *Lesher v. L. Offs. Of Mitchell N.*

*Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011).[2]

The "least sophisticated debtor standard" is a "low standard," intended to "protect all consumers, the gullible as well as the shrewd." *Id.* (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). This standard, however, also "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (internal quotation marks and citation omitted). Thus, it "prevents liability for bizarre or idiosyncratic interpretations of collection notices," *id.* at 354, and assumes that "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).

Pursuant to the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with collection of any debt." 15 U.S.C. 1692e. Specifically, and in relevant part, Section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* at § 1692e(5). And Section 1692e(10) prevents a debt collector from "us[ing] . . . any false representation or deceptive means to collect or attempt to collect any debt[.] *Id.* at § 1692e(10). The FDCPA also prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* at § 1692f.

---

[2] Courts refer to the "least sophisticated debtor" and the "least sophisticated consumer" interchangeably. *See, e.g.*, *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 n.1 (3d Cir. 2006).

When first communicating with a consumer, the FDCPA requires a debt collector to provide notice of the debt as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  Taken together, "[p]aragraphs 3 through 5 of section 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." *Wilson*, 225 F.3d at 353-54.  If a consumer notifies the debt collector in writing within the thirty (30) day period described in 15 U.S.C. § 1692g(a)(4), "the debt collector shall cease collection of the debt, or any disputed portion thereof," until the debt collector obtains verification of the debt, and provides that information to the consumer.  15 U.S.C. § 1692g(b).  The FDCPA also makes clear that debt collectors cannot engage in activity that overshadows a consumer's rights under the law.  Section 1692g(b) states, in relevant part, that [a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

Congress has made clear that the "requirement that the validation notice not be overshadowed as integral to the FDCPA." *Riccio v. Credit Collection Servs.*, No. 17-8889, 2019 U.S. Dist. LEXIS 31776, at *12 (D.N.J. Feb. 28, 2019). When addressing overshadowing claims pursuant to the FDCPA, the Third Circuit has stated that an overshadowing claim can be successfully made if it would make the least sophisticated consumer unsure as to their rights. *Wilson*, 225 F.3d at 354. In short, this means that the notice must not be overshadowed or contradicted by other messages or notices from the debt collector. *Laniado v. Certified Credit & Collection Bureau*, 705 F. App'x 87, 89 (3d Cir. 2017).

Finally, with respect to third parties, the FDCPA provides that a debt collector "may not communicate, in connection with the collection of any debt, with any person other than the consumer" "without the prior consent of the consumer given directly to the debt collector[.]" 15 U.S.C. § 1692c.

B.    *Standing*

The parties' dispute focuses on whether the content of the June and July letters is sufficiently "false, deceptive, or misleading" so as to constitute a violation of the Act; and whether the use of a letter vendor for the purposes of mailing those letters is a violation of the FDCPA. However, before addressing the merits of a dispute, "a court must determine whether it has subject-matter jurisdiction over the case before it." *Madlinger v. Enhanced Recovery Co., LLC*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at *7 (D.N.J. June 21, 2022).

Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. CONST. art. III, § 2. This limitation serves the purpose of "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 185 L. Ed. 2d 264

(2013) (citations omitted).  As a result, a plaintiff must demonstrate that they have "standing" to bring suit in federal court.  *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, No. 21-16013, 2022 U.S. Dist. LEXIS 112024, at *5 (D.N.J. June 24, 2022).  "Absent standing, there is no case or controversy, and a federal court cannot exercise subject-matter jurisdiction over the plaintiff's claims," and must dismiss the action.  *Madlinger*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at *8.

 "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).  To demonstrate that Plaintiff has suffered an injury-in-fact, he "must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical."  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016).

The United States Supreme Court recently addressed the issue of standing in the similar context of the Fair Credit Reporting Act ("FCRA").  *See generally Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).  In *Spokeo*, the Supreme Court analyzed whether a plaintiff who alleged a claim under the FCRA had sufficiently alleged an injury so as to have standing to sue.  *Id.*  Plaintiff asserted that Spokeo, Inc., which operated a "people search engine" to conduct background checks, had violated the FCRA by collecting and sharing inaccurate information about Plaintiff to his customers, a technical violation of the FCRA.  *Id.* at 333-36.  Plaintiff asserted that a statutory violation of the FCRA had occurred, and alleged "that Spokeo willfully failed to comply with the FCRA requirements."  *Id.*

The *Spokeo* Court explained that typically, for a plaintiff to have standing to pursue an action in federal court, there must be an injury that is "concrete" – "that is, it must actually exist," and not be "abstract." *Id*. at 340. However, the Supreme Court went on to explain that a "concrete" injury need not necessarily be a "tangible" one. *Id.* (citing several cases discussing "intangible injuries" that are also concrete, such as violations of the right to Free Speech and the Free Exercise of Religion). Noting that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," the Court concluded that whether Congress has identified an action as legally cognizable and redressable can be instructive when determining whether a statutory violation, without further alleged injury, is sufficient to confer Article III standing. *Id.* Nevertheless, the Court still made very clear that although Congress may have the ability to "identify[] and elevat[e] intangible harms," a person cannot "for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 341. The *Spokeo* Court, in relying on the idea that not all statutory violations "cause harm or present any material risk of harm," made clear that for a plaintiff to have standing, they must demonstrate a harm that is *both* particularized *and* concrete, even in the context of a statutory violation, such as the type this Court is presented with here. *Id.* at 342.

The Supreme Court expanded on the principle identified in *Spokeo* that a plaintiff must put forth a concrete harm that is more than a technical, procedural violation to establish Article III standing in *TransUnion*, 141 S. Ct. at 2200. There, the Court explained that "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 2205. Importantly, the Court reaffirmed that an "injury in law is not an injury in fact," and standing still requires a plaintiff to have suffered a

concrete harm as a result of a statutory violation to pursue redress in federal court. *Id.* It is critical

to avoid "[a] regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants

who violate federal law." *Id.* at 2207. To truly cement this idea that a violation must "personally

harm" a plaintiff for them to suffer a "concrete harm," the *TransUnion* Court provided a

hypothetical situation for consideration.

> Suppose first that a Maine citizen's land is polluted by a nearby
> factory. She sues the company, alleging that it violated a federal
> environmental law and damaged her property. Suppose also that a
> second plaintiff in Hawaii files a federal lawsuit alleging that the
> same company in Maine violated that same environmental law by
> polluting land in Maine.

*Id.* at 2205. The Court then concluded that even if both plaintiffs had been afforded a cause of

action by virtue of the technical statutory violation, only the Maine plaintiff, who had "suffered

concrete harm to her property," could continue to bring suit in federal court. *Id.* at 2206.

Conversely, the Hawaii resident could "not proceed because that plaintiff ha[d] not suffered any

physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis

for a lawsuit in American courts." *Id.* Ultimately, the Court concluded that an "uninjured plaintiff

who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but

instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of

course, to obtain some money via the statutory damages)." *Id.* at 2206 (quoting *Spokeo*, 578 U.S.

at 345.)

    *TransUnion* ultimately established that the Supreme Court has "rejected the proposition

that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a

person a statutory right and purports to authorize that person to sue to vindicate that right."

*TransUnion*, 141 S. Ct. at 2205 (internal quotations and citations omitted). Ultimately, the

*Spokeo* and *TransUnion* Courts made clear that "Article III standing requires a concrete injury

even in the context of a statutory violation." *Id.* (quoting *Spokeo*, 578 U. S., at 341.)

In the wake of the Supreme Court's decision in *TransUnion*, FDCPA claims have come under scrutiny to ensure that a plaintiff's FDCPA claims are sufficient to confer Article III standing. Because "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III," *id.* at 2205, this Court has an independent obligation to ensure that Plaintiff here has actually suffered a concrete injury, and not been the victim of a mere statutory violation, without more.

Plaintiff pleads three basic theories that the Court must analyze, which it will do below.

    1.   <u>Third-Party Disclosure in Violation of the FDCPA[3]</u>

Plaintiff asserts that Defendant has violated his rights under 15 U.S.C. §1692(c) "by conveying Plaintiff's information to a third-party." Specifically, Plaintiff relies on Section 1692(c)(b), which states that:

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Plaintiff alleges that Defendant "sent information regarding Plaintiff's account to a third-party letter vendor. (Compl. ¶ 62). In doing so, Plaintiff alleges that Defendant disclosed his status as

---

[3] This Court interchangeably refers to the theory of Third-Party Disclosure as the "Letter Vendor Theory" or "Mail Vendor Theory." Plaintiff's Complaint states that "Defendant sent information regarding Plaintiff's account to a third-party letter vendor (the 'Letter Vendor')," (Compl. ¶ 62), a designation commonly used among the courts to describe FDCPA causes of action where plaintiffs allege that information regarding their debt was communicated to a third-party mailing vendor in connection with the collection of a debt.

a debtor, the amount of his debt, and "other highly personal and confidential information about Plaintiff and his account." (*Id*. ¶ 63.)

Plaintiff also alleges that Defendant's use of a letter vendor violates Section 1692(f). Section 1692(f) generally prohibits the use of unfair practices in the collection of debt. *See* 15 U.S.C. §1692(f). Plaintiff asserts that Defendant violated this section "by using unfair means in … the collection of a debt by knowingly disclosing sensitive information about Plaintiff's debt to third parties not expressly authorized under the FDCPA." (Compl. ¶ 90E.)

District Courts in the Third Circuit, and many nationwide, have addressed standing in the context of the letter vendor theory. *See, e.g.*, *Madlinger*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, *Pagan v. Convergent Outsourcing, Inc.*, No. 21-12130, 2022 U.S. Dist. LEXIS 71428 (D.N.J. Mar. 30, 2022), *Rohl v. Prof'l Fin. Co.*, No. 21-17507, 2022 U.S. Dist. LEXIS 96934 (D.N.J. May 31, 2022), *Foley v. Medicredit, Inc.*, No. 21-19764, 2022 U.S. Dist. LEXIS 135422 (D.N.J. July 29, 2022), *Barclift v. Keystone Credit Servs., LLC*, 585 F. Supp. 3d 748 (E.D. Pa. 2022). A vast majority of courts, both in this District and nationwide, have concluded that the letter vendor theory is not, alone, sufficient to confer Article III standing. *See Barclift*, 585 F. Supp. 3d 748 (collecting national cases determining that the letter vendor theory does not establish a concrete injury for purposes of Article III standing.) This Court, following the framework laid out in *TransUnion*, finds the same.

It is clear that to successfully pursue a claim in federal court based on a statutory violation, Plaintiff must allege more than just a statutory violation divorced from a concrete harm. *TransUnion*, 141 S. Ct. at 2213 (2021). *See Barclift*, No. 5:21-cv-04335, 2022 U.S. Dist. LEXIS 26355, at *11-*13. As a result, this Court "must engage in a two-part inquiry when assessing statutory injuries: first, whether the alleged injury bears a close relationship to a traditionally

recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law." *Rohl*, No. 21-17507, 2022 U.S. Dist. LEXIS 96934.

In undertaking the first step of this analysis, courts analyzing the letter vendor theory have concluded that the alleged harms asserted by Plaintiff "most closely resembles the privacy cause of action for public disclosure of private facts." *See Pagan*, No. 21-12130, 2022 U.S. Dist. LEXIS 71428, at *7-8 (finding that mailing of debt collection letters via a third-party letter vendor is most closely analogous to the tort of public disclosure of private facts.) *See also Madlinger*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at *19 (same).  The New Jersey Supreme Court has defined this tort as the "invasion of privacy by unreasonable *publication of private facts* [as occurring] when it is shown that the matters revealed were actually private, that dissemination of such facts would be offensive to a reasonable person, and that there is no legitimate interest of the public in being apprised of the facts publicized."  *Foley*, 2022 U.S. Dist. LEXIS 135422, at *7 (quoting *Romaine v. Kallinger*, 109 N.J. 282, 537 (N.J. 1988) (emphasis added).

As it is clear that publication is an essential element of this tort, and as Plaintiff has not pled publication, Plaintiff's claims must fail.  At no point does Plaintiff's Complaint allege that his private information was actually publicized.  (*See* Compl. ¶¶ 62-64.)  The Second Restatement of Torts is clear that

> Publicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . . Thus it is not an invasion of the right to privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

RESTATEMENT (SECOND) OF TORTS § 652D, COMMENT (A) (AM. L. INST. 1977).  In fact, here, as was the case in a recent case in this district analyzing the letter vendor theory for purposes of standing, "nothing in Plaintiff's amended complaint alleges that [his] information, including [his]

16

name, address, and debt owed, ever was made accessible to more than a single individual who populated [his] letter, let alone the broader public." *Madlinger*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at *21-22. Following, Plaintiff has not established an injury sufficient to confer standing. *See Pagan*, No. 21-12130, 2022 U.S. Dist. LEXIS 71428, at *10 (holding that plaintiffs have "failed to allege an Article III injury sufficient to confer standing" and noting that "[c]ritically, Plaintiff[] do[es] not allege that anyone actually read [his] information (rather than merely processed it), or that there has otherwise been publicity to any meaningful degree.")

So too, this Court also concludes that Plaintiff has not alleged an injury other than the use of a letter vendor, which is, at most, an injury-at-law. Since Plaintiff only presents evidence of an injury-in-law, and nothing further, this Court lacks subject matter jurisdiction over this claim. *See Rohl,* No. 2117507, 2022 U.S. Dist. LEXIS 96934,; *Pagan,* No. 21-12130, 2022 U.S. Dist. LEXIS 71428, at *10; *Barclift*, No. 21-4335, 2022 U.S. Dist. LEXIS 26355 (all finding the lack of publicity fatal to the plaintiffs' attempted analogization of the mail vendor theory to the tort of disclosure of private facts.")

## 2.    Debt Collection Practices that "Overshadow" a Debtor's Rights

In addition to the letter vendor claim, Plaintiff also claims that the July Letter itself violated the FDCPA in several ways. Plaintiff asserts that the July Letter was "sent and arrived within the 30 day period provided for by the June 18, 2020 letter for Plaintiff to dispute or seek verification of the Debt," "did not inform Plaintiff that he still had time to dispute the Debt since the 30-day period for verification or dispute had not yet passed," and did not advise Plaintiff that his rights under Section 1692g(a) had not yet expired. (Compl. ¶¶ 52-54.) Plaintiff also asserts that the July Letter "demanded payment from Plaintiff," and claims that the language of the July Letter may cause the least sophisticated consumer to believe "that should he or she make payment in full on

the Debt after receiving the July 16, 2020 [letter], then he or she would be receiving a new credit card, when in fact, all he or she would be receiving would be an application for a new credit card." (Compl. ¶¶ 53, 58.)  Plaintiff claims that if he had paid off the balance of the Debt per the July letter, Defendant would have not issued the Optima credit card or would have issued it with severe restrictions.  (Compl. ¶ 59.)  The July Letter states, in relevant part:

> American Express values your previous relationship and would like to offer you the opportunity to regain Card Membership.  You have been selected to receive an Optima card application if you pay your balance in full on the American Express® account referenced above. After you pay your balance in full, American Express will send you an application for the new Optima Card.

(July Letter.) The letter then goes on to state that the application for the Optima Card would be approved unless Plaintiff met one of four criteria that would disqualify him, including having an "active bankruptcy at the time of your application," and if "American Express determines that you do not have the financial capacity to make the minimum payment on this new Optima Card account."  (July Letter.)  In sum, Plaintiff claims that the July Letter "overshadowed Plaintiff's debt verification rights."  (Compl. ¶ 56.)

The Court again turns to *TransUnion* for guidance in analyzing whether Plaintiff's general assertions of overshadowing and confusion are sufficient to confer Article III standing.  As made clear above, "the Supreme Court held in *Transunion* that an injury-in-law is not an injury-in-fact sufficient to confer Article III standing."  *Rohl*, No. 21-17507, 2022 U.S. Dist. LEXIS 96934, at *11.

Applying the same two step analysis as above, the Court finds that the harm Plaintiff alleges here most closely resembles fraudulent misrepresentation.  *See Id.* at *11 (finding that the harms Plaintiff alleges about "misleading representation" in the collection letter to be most closely analogous to fraudulent misrepresentation.)  *See also Vaughan*, No. 21-16013, 2022 U.S. Dist.

18

LEXIS 112024, at *11 ("As an initial matter, deceptive debt collection practices and misleading or inaccurate information bear a preliminary kinship to common-law fraud or fraudulent misrepresentation.")  To set forth a viable claim for fraudulent misrepresentation, a plaintiff must show "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 U.S. Dist. LEXIS 60677, at 19 (D.N.J. Mar. 30, 2021).  Importantly, "*Transunion* does not require an exact duplicate of the common law analogue," but the harm must be similar in kind.  *Vaughan*, No. 21-16013, 2022 U.S. Dist. LEXIS 112024, at *11.

Here, Plaintiff has failed to show that he has relied in any way on the alleged misrepresentations in the letters, and subsequently has failed to show that he was actually harmed in any way by their receipt.  Plaintiff has not alleged that he suffered a concrete harm sufficient to confer Article III standing.  Even taking the facts in the light most favorable to Plaintiff, the Complaint "fails to plausibly allege that []he relied on [Defendant's] representation such that h[is] injury-in-law is transformed into an injury-in-fact."  *Rohl*, No. 21-17507, 2022 U.S. Dist. LEXIS 96934, at *12.  This informational harm, without more, is insufficient to confer standing.  *See Daye v. GC Servs. Ltd. P'ship*, No. 21-7981, 2022 U.S. Dist. LEXIS 172417, at *9 (D.N.J. Sep. 23, 2022).

Ultimately, "[h]aving asserted only an alleged statutory violation that resulted in no 'downstream consequences' or 'adverse effects' caused by said statutory violation, Plaintiff[] fail[s] to meet [his] burden of establishing the elements of standing."  *Sandoval v. Midland Funding, LLC*, No. 18-09396, 2022 U.S. Dist. LEXIS 104894, at *16 (D.N.J. June 10, 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. at, 2214).

3.    The Inclusion of Multiple Addresses in the June Letter

Finally, Plaintiff alleges that Defendant's June Letter violated the FDCPA because the June Letter does not contain or effectively provide a means for consumers to dispute the Debt because it contains multiple addresses, which may confuse the consumer. (Compl. ¶ 47.) Plaintiff claims this statutory violation arises because the June Letter "does not direct the consumer to dispute the Debt with a particular address for an in writing [sic] dispute." (Compl. ¶ 39.) Plaintiff alleges that the June Letter contained two separate addresses for Defendant, which may create confusion for the least sophisticated consumer.[4] (Compl. ¶¶ 40-42.) Plaintiff asserts that the letter, by not "direct[ing] the consumer to dispute the Debt with a particular address" in writing, violates the requirements of Section 1692g of the FDCPA. (Compl. ¶ 39.) Plaintiff alleges that the use of multiple addresses in the letter is "deceptive and/or misleading," because consumers might think they are required to send two separate letters to dispute the Debt or might be confused as to where to dispute the Debt. (Compl. ¶¶ 46-49.) Further, Plaintiff claims that the June Letter may dissuade the least sophisticated consumer from disputing the debt, "since he or she may not know to which office the dispute should be sent," or might find it too burdensome and decide not to dispute the Debt." (Compl. ¶¶ 41, 46-47.) Plaintiff does not assert that he was personally confused by the

---

[4] In Plaintiff's opposition brief, he identifies three different addresses in the June Letter, instead of the two identified in the Complaint. (Opp. 11-13.) Generally, a Plaintiff would not be permitted to amend his Complaint in opposition papers. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'")). However, for purposes of Article III standing, the Court need not engage in a merit based analysis about the inclusion of all three addresses and the impact on Plaintiff's possible confusion. At this time, the Court is persuaded that Plaintiff's failure to allege that he was personally confused or took specific action because of the letters is sufficient for this analysis.

inclusion of multiple addresses, nor does he allege that he took any specific action based on their inclusion.

As discussed above, this Court must analyze whether Plaintiff has alleged sufficient facts to show Article III standing. For purposes of standing, Plaintiff's allegations of the multiple addresses in the June Letter are substantially similar to those regarding his overshadowing claims – both are premised on the idea that the letters caused confusion and interfered with Plaintiff's ability to exercise his rights under the FDCPA. As such, the Court will engage in a similar analysis here.

This district has already made clear that confusion, without more, is insufficient to confer standing for purposes of FDCPA claims in the specific context of multiple address claims. *See Madlinger*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at *14 (finding no standing for multiple address claims because Plaintiff's allegations of confusion are insufficient.) In *Madlinger*, as here, plaintiff alleged that he received a debt collection letter that included four addresses. *Id.* at *3. Similar to here, plaintiff in *Madlinger* asserted that "the least sophisticated consumer would be confused as to which 'office' a debt verification letter should be sent to." *Id.* The court in *Madlinger* was not persuaded by these assertions.

> Plaintiff posits that the least sophisticated consumer "may reasonably conclude that they [sic] would have to send out two separate debt verification letters" or alternatively, "may be dissuaded from disputing the debt at all, since he or she may not know which office the debt should be disputed." … These speculations aside, however, nowhere in Plaintiff's amended complaint does she allege that she sought to send out a debt verification letter, let alone two separate debt verification letters, or that she refrained from sending a letter to her detriment because she was somehow discouraged by the multiple addresses in the debt collection letter.

*Id.* at \*17. (internal citations omitted.) The Court is persuaded by this reasoning and holds the same.

Here too, the Court concludes that misleading or confusing debt communications are most closely analogous to "the common-law analogue of fraudulent and negligent misrepresentation." *Madlinger*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at \*15. As discussed above, a critical element of both a negligent or fraudulent misrepresentation claim is reliance of some kind. *Bulboff*, No. 19-18236, 2021 U.S. Dist. LEXIS 60677, at \*7. "In other words, under common-law, 'there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been.'" *Madlinger v*, No. 21-00154, 2022 U.S. Dist. LEXIS 109328, at \*16 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020)).

The crux of Plaintiff's multiple address theory claims are that "[t]he least sophisticated consumer may be dissuaded from disputing the debt at all, since he or she may not know to which office the dispute should be sent." (Compl. ¶ 41.) Plaintiff does not allege that he relied on this information in attempting to dispute his debt. Instead, he generally asserts that "[i]n the last year, Defendant sent collection letters to numerous New Jersey consumers in which Defendant included multiple addresses in an initial written communication to a consumer," which Plaintiff characterizes as "deceptive and/or misleading." (Compl. ¶¶ 49-50.) This general allegation of confusion, without any allegation of reliance, is insufficient to confer standing. *See Rohl*, No. 21-17507, 2022 U.S. Dist. LEXIS 96934, at \*12 ("To be sure, merely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation — both of which require some form of reliance." (internal quotations omitted)); *Vaughan*, No. 21-16013, 2022 U.S. Dist. LEXIS 112024, at \*12 (Holding that "confusion itself is not enough," when analyzing whether a plaintiff had

standing for a confusion based FDCPA claim.). *But see Foley*, No. 21-19764,2022 U.S. Dist. LEXIS 135422, at *12 ("Courts in this District acknowledge, confusion, when coupled with action or inaction, may have a sufficiently close relationship with a 'traditional harm' to confer standing.")

Since Plaintiff has failed to show any reliance or allege anything more than a mere possibility of confusion on behalf of the least sophisticated consumer, although not himself, Plaintiff has not sufficiently alleged Article III standing to bring his multiple address claims.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of standing, and Defendant's Motion to Dismiss is **DENIED AS MOOT**. The Court will permit Plaintiff 30 days in which to amend his Complaint to the extent that he can plead concrete injury consistent with *TransUnion*. An appropriate Order will follow.

Date: <u>October 25, 2022</u>                        */s/ Georgette Castner*

                                   GEORGETTE CASTNER, U.S.D.J.